**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

**LEAH BURGIN**
914 North Highway 340
Parrottsville, Tennessee 37843
**Individually and as Co-Ancillary Administrator of the Estate of JAYCEE BURGIN, a deceased minor,**

**and**

**BOBBY BURGIN**
914 North Highway 340
Parrottsville, Tennessee 37843
**Individually and as Co-Ancillary Administrator of the Estate of JAYCEE BURGIN, a deceased minor,**

**Plaintiffs**

**v.**

**SAGEBRUSH OF NORTH CAROLINA, LLC,**
129 Fast Lane
Mooresville, North Carolina 28117

**Serve:**
**CT Corporation System**
**Registered Agent**
**225 Hillsborough Street**
**Raleigh, North Carolina 27603**

**and**

**SAGEBRUSH/TENNESSEE, LLC**
129 Fast Lane
Mooresville, North Carolina 28117

**Serve:**
**CT Corporation System**
**Registered Agent**
**225 Hillsborough Street**
**Raleigh, North Carolina 27603**

**and**

**CASE NO.________________**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**SAGEBRUSH STEAKHOUSE** )
129 Fast Lane )
Mooresville, North Carolina 28117 )
)
**Serve:** )
**CT Corporation System** )
**Registered Agent** )
**225 Hillsborough Street** )
**Raleigh, North Carolina 27603** )
)
**and** )
)
**CAROUSEL CAPITAL PARTNERS, L.P.** )
201 North Tryon Street, Suite 2450 )
Charlotte, North Carolina 28202 )
)
**Serve:** )
**Carousel Capital Company, L.L.C.** )
**Registered Agent** )
**201 N Tryon Street , Suite 2450** )
**Charlotte, North Carolina 28202** )
)
**and** )
)
**HOLTEN MEAT, INC.** )
1682 Sauget Business Boulevard )
Sauget, Illinois 62206 )
)
**Serve:** )
**Mike Holten** )
**Registered Agent** )
**1682 Sauget Business Boulevard** )
**Sauget, Illinois 62206** )
)
**Defendants** )

**COMPLAINT**

COME NOW the Plaintiffs, LEAH BURGIN and BOBBY BURGIN, individually and as Co-Ancillary Administrators of the Estate of JAYCEE BURGIN, a deceased minor, by and through their attorneys, Janet, Jenner & Suggs, LLC, and for their causes of action, allege as follows:

# I. PREAMBLE

Jaycee Burgin was 21 months old when she died a horrible, painful and unnecessary death. Jaycee went with her parents to Sagebrush Steakhouse in Newport, Tennessee. Following her meal eaten at the restaurant and from a take-home container the next day, Jaycee became terribly ill. She developed an unremitting fever and bloody diarrhea. Admitted to the hospital days later, Jaycee was diagnosed with Escherichia coli O157:H7, a leading cause of food borne illness

Jaycee's fate was determined by the defendants -- manufacturers, distributers and/or suppliers of food. The defendants failed to follow the standards of care expected of reasonably prudent food purveyors, and failed to follow the standards set forth by the Federal Food, Drug and Cosmetic Act and the Federal Meat Inspection Act ("FMIA") 21 U.S.C. §§ 600 *et seq*. The defendants, well aware of the dangers of poorly treated, handled and inspected food, tragically failed in their obligations to serve the consuming public in general, and the Burgin family in particular, food that is not contaminated with a lethal pathogen.

This suit seeks damages for Jaycee's death, and the untold suffering of her parents, all of which were all totally avoidable had the defendants served unadulterated food, and taken those steps necessary to make sure that going to a restaurant is not a life-taking event.

## II. PARTIES

1. Plaintiffs, LEAH BURGIN and BOBBY BURGIN, are the parents of JAYCEE Burgin, a deceased minor. On April 30, 2008, Plaintiffs were duly appointed by the Clerk of Superior Court of Mecklenburg County, North Carolina as the Co-Ancillary Administrators of the Estate of Jaycee Burgin and are authorized to bring this action on behalf of the Estate. At all relevant times, and now, Plaintiffs were United States citizens and residents of Parrottsville, Cocke County, Tennessee.

2. Defendant, SAGEBRUSH OF NORTH CAROLINA, LLC (hereinafter "Sagebrush NC"), is a domestic corporation with its principal place of business located at 129 Fast Lane, Mooresville, North Carolina 28117.

3. Defendant, SAGEBRUSH/TENNESSEE, LLC (hereinafter "Sagebrush TN"), is a foreign corporation with its principal place of business located at 129 Fast Lane, Mooresville, North Carolina 28117.

4. Defendant, SAGEBRUSH STEAKHOUSE (hereinafter "Steakhouse"), is a foreign corporation doing business in the State of Tennessee at various locations, including but not limited to, 201 Heritage Boulevard, Newport, Tennessee 37821 and with its principal place of business located at 129 Fast Lane, Mooresville, North Carolina 28117.

5. Defendant CAROUSEL CAPITAL PARTNERS, L.P. (hereinafter "Carousel") is a foreign limited partnership with its principal place of business located at 201 North Tryon Street, Suite 2450, Charlotte, North Carolina 28202. At all times relevant hereto, Carousel was a private investment firm that owned various corporations, including Steakhouse.

6. Defendants, Sagebrush NC, Sagebrush TN, Steakhouse and Carousel will hereafter be referred to collectively as "Sagebrush."

7. Defendant, HOLTEN MEAT, INC. (hereafter "Holten") is a foreign corporation with its principal place of business located at 1682 Sauget Business Boulevard, Sauget, Illinois 62206. At all relevant times, Defendant Holten was the manufacturer and distributor of meat products including, but not limited to, the meat products purchased by Sagebrush to be sold to the general public, including the Plaintiffs, at the Sagebrush Steakhouse located at 201 Heritage Boulevard, Newport, Tennessee 37821.

## III. JURISDICTION AND VENUE

8. The court has personal jurisdiction over this matter pursuant to 28 U.S.C. § 1332(1) because the Plaintiffs are residents of the State of Tennessee and at least one Defendant is a corporation with a principal place of business within the State of North Carolina.

9. The amount in controversy in this matter exceeds $75,000.00, exclusive of interest and costs.

10. Venue is proper in this jurisdiction pursuant to 28 U.S.C § 1391(a)(2). All Defendants regularly solicit and engage in business and other persistent courses of conduct and derive substantial revenues from goods used and consumed in the State of North Carolina and/or for services rendered in the State of North Carolina.

11. Defendants expected or reasonably should have expected that their tortious acts would have consequences in the State of North Carolina.

12. Defendants derive substantial revenue in the State of North Carolina from interstate commerce.

13. Defendants committed a tortious act within the State of North Carolina by marketing, distributing, retailing and selling dangerous and defective food products to Plaintiffs, causing serious and permanent injury to them.

14. Defendants are amenable to jurisdiction and service of process in the State of North Carolina because Defendants are doing business in the State of North Carolina, have committed a tort in whole or in part in the State of North Carolina, and/or have continuing minimum contacts with the State of North Carolina.

## IV. GENERAL ALLEGATIONS

### A. CHRONOLOGY OF EVENTS

15. On October 5, 2007, Plaintiffs Leah Burgin, Bobby Burgin and Jaycee Burgin were customers of Defendants at the Sagebrush Steakhouse in Newport, Tennessee. Plaintiffs Leah Burgin and Bobby Burgin each ordered hamburger steaks. Jaycee, age 21 months, ate salad from the salad bar. Plaintiffs did not consume the entire meal, and brought leftover hamburger steak home.

16. On October 6, 2007, Plaintiff Bobby Burgin reheated the leftover hamburger steak and it was consumed by himself and Jaycee. Later that evening, Jaycee developed a fever of 103° and severe abdominal pains.

17. On October 7, 2007, early in the morning, Jaycee developed diarrhea, which worsened throughout the day. She continued to run a fever and suffered from abdominal pains.

18. On October 8, 2007, Jaycee's symptoms worsened and Plaintiffs sought medical attention. Plaintiff Leah Burgin brought Jaycee to the pediatrician, where the physicians diagnosed Jaycee with a stomach virus. Later that night, Jaycee developed bloody diarrhea that continued to worsen.

19. On October 9, 2007, Jaycee's symptoms worsened and her mother returned her to the pediatrician. Leah Burgin was instructed to bring Jaycee to the emergency room at East Tennessee Children's Hospital, where she was admitted that evening.

20. On October 10, 2007, Jaycee Burgin cultured positive for E. coli O157:H7. Plaintiffs Leah Burgin and Bobby Burgin were advised of their daughter's condition, including kidney failure and that Jaycee was suffering from the life-threatening illness Hemolytic Uremic Syndrome, (HUS) as a result of her E. coli O157:H7 infection. Jaycee was then transferred to the pediatric intensive care unit.

21. On October 11, 2007, Jaycee developed seizures for which she was prescribed Dilantin. Later that day, Jaycee underwent a surgical procedure to insert a peripherally inserted central catheter (PIC line) and another catheter for future dialysis. Jaycee was then transferred to the University of Tennessee Medical Center where she could undergo her dialysis treatments. Jaycee continued to suffer seizures through the day.

22. On October 12, 2007, Jaycee experienced respiratory distress and needed to be revived by her physicians before being placed on a ventilator. Another PIC line was inserted in Jaycee Burgin's leg, and she began hemodialysis treatment

23. On October 13, 2007, Jaycee was taken off the ventilator and her sedation medication was discontinued so that she could regain consciousness. However, Jaycee did not regain consciousness, and barely opened her eyes that day. In fact, Jaycee stopped breathing again and needed to be placed back on the ventilator.

24. On October 15, 2007, Jaycee evidenced an extremely decreased pulse with no blood pressure. She was heavily medicated with epinephrine, norepinephine and dopamine to try and raise her blood pressure.

25. On October 16, 2007, Jaycee suffered from significant bradycardia that required chest compressions and additional epinephrine and other mediations until she resumed sinus tachycardia. Later that day, she developed severe tachycardia and was observed to have fixed and dilated pupils. Multiple apnea tests were conducted and it was determined that the results were consistent with brain death. At 10:52 p.m., Jaycee Burgin was pronounced dead at the age of 21 months.

## B. ESCHERICHIA COLI O157:H7

26. Escherichia coli O157:H7 is a leading cause of food borne illness. Based on a 1999 estimate, 73,000 cases of infection and 61 deaths occur in the United States each year.

27. Infection with E. coli often leads to bloody diarrhea, and occasionally to kidney failure. People can become infected with E. coli O157:H7 in a variety of ways. Most illness has been associated with eating contaminated ground beef. In addition, people can become infected with E. coli O157:H7 from eating contaminated produce, including lettuce.

28. E. coli O157:H7 is one of hundreds of strains of the bacterium Escherichia coli. Although most strains are harmless, this strain produces a powerful toxin that can cause severe illness. E. coli O157:H7 has been found in the intestines of healthy cattle, deer, goats, and sheep.

29. E. coli O157:H7 was first recognized as a cause of illness in 1982 during an outbreak of severe bloody diarrhea; the outbreak was traced to contaminated hamburgers. Since then, more infections in the United States have been caused by eating undercooked ground beef than by any other food. Recently, there have been numerous reported cases of E. coli O157:H7 linked to contaminated produce.

30. The combination of letters and numbers in the name of the bacterium refers to the specific markers found on its surface and distinguishes it from other types of E. coli.

31. Meat can become contaminated during slaughter, and organisms can be mixed into meat when it is ground. Eating meat, especially ground beef can cause infection. Contaminated meat looks and smells normal. The number of organisms required to cause disease is very small.

32. Produce can become contaminated as a result of contamination from animal management practices, water use, and the environmental conditions on the farms where the produce is grown and packaged.

33. Escherichia coli O157:H7 infection often causes severe bloody diarrhea and abdominal cramps. Sometimes the infection causes non-bloody diarrhea or no symptoms. In some persons, particularly children under five years of age and the elderly, the infection can also cause a complication called hemolytic uremic syndrome (HUS), in which the red blood cells are destroyed and the kidneys fail. About 8% of persons whose diarrheal illness is severe enough that they seek medical care develop this complication. In the United States, HUS is the principal cause of acute kidney failure in children, and most cases of HUS are caused by E. coli O157:H7.

34. The symptoms of E. coli O157:H7can develop within hours after ingesting the bacteria. This is especially true with young children due to their underdeveloped immune systems.

35. Infection with E. coli O157:H7 is diagnosed by detecting the bacterium in the stool. About one-third of laboratories that culture stool still do not test for E. coli O157:H7, so it is important to request that the stool specimen be tested on sorbitol-MacConkey (SMAC) agar for this organism.

## IV. CAUSES OF ACTION

### Count I
### Strict Liability

36. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

37. At all times relevant hereto, Defendants were manufacturers, distributors and/or sellers of the adulterated food product that is the subject of the action, and the Defendants were in the business of manufacturing and/or selling like products.

38. The adulterated food product that the Defendants manufactured, distributed and/or sold was, at the time it left the Defendants' control, defective and unreasonably dangerous for its ordinary and expected use because it contained E. coli O157:H7, a harmful and potentially lethal food-borne pathogen.

39. The adulterated food product that the Defendants manufactured, distributed and/or sold was delivered to the Plaintiffs without change in its defective condition. The Plaintiffs thereafter used the product in a reasonably foreseeable manner by consuming it and the ordinary expectations of the consuming public in general, and the Plaintiffs herein, were not met.

40. The Plaintiffs' illnesses and associated legal injuries occurred as a direct and proximate cause of the defective and unreasonably dangerous condition of the adulterated food product that the Defendants manufactured and/or sold.

41. Had Jaycee Burgin, not eaten contaminated food served and/or provided to her at the Sagebrush restaurant on October 5-6, she would not have ingested e-coli, would not have become critically ill and died from E. coli O157:H7, and the Plaintiffs would not have suffered the injuries and damages asserted with particularity herein.

WHEREFORE, the Plaintiffs request that this Court enter judgment against the Defendants and award all damages, costs, and any other relief in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

**Count II**
**Breach of Warranty**

42. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

43. The Defendants are liable to the Plaintiffs for breaching express and implied warranties they made regarding the adulterated product that caused the Plaintiffs' injuries. These express and implied warranties included, among others, the implied warranties of merchantability and fitness for a particular use. Specifically, though not exclusively, the Defendants also expressly warranted, through their sale of food to the public and by the statements and conduct of their employees and agents, that their food was fit for human consumption and not otherwise adulterated or injurious to health.

44. The adulterated food that the Defendants manufactured, distributed and/or sold to the Plaintiffs would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

45. The adulterated food that the Defendants manufactured, distributed and/or sold to the Plaintiffs was not fit for the uses and purposes intended, *i.e.* human consumption, and the product was therefore in breach of the implied warranty of fitness for its intended use.

46. The Plaintiffs' illnesses and associated legal injuries occurred as a direct and proximate result of Defendants' several breaches of the express and implied warranties discussed above.

47. Had Jaycee Burgin, not eaten contaminated food served and/or provided to her at the Sagebrush restaurant on October 5-6, she would not have ingested e-coli, would not have become critically ill and died from E. coli O157:H7, and the Plaintiffs would not have suffered the injuries and damages asserted with particularity herein.

WHEREFORE, the Plaintiffs request that this Court enter judgment against the Defendants and award all damages, costs, and any other relief in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

**Count III**

**Negligence**

48. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

49. The Defendants owed to the Plaintiffs a duty to use reasonable care in the manufacture, distribution, handling, and sale of their food products.

50. The Defendants owed to the Plaintiffs a duty to comply with all statutes, laws, regulations, and safety codes pertaining to the manufacture, distribution, handling, and sale of their food products. The Plaintiffs were among the class of persons intended to be protected by the statutes, laws, regulations, and safety codes referenced above and pertaining to the manufacture, distribution, handling, and sale of similar food products.

51. The Defendants owed a duty to supervise, train, and monitor their employees properly, and to ensure their employees' complied with all applicable statutes, laws, regulations, and safety codes pertaining to the manufacture, distribution, storage, and sale of similar food products. .

52. The Defendants owed a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, and free of defects and that otherwise complied with applicable federal, state, and local laws, ordinances, and regulations, and that were clean, free from adulteration, and safe for human consumption.

53. The Defendants owed a duty of care to the Plaintiffs to manufacture and/or sell food that was not adulterated, that was fit for human consumption, that was reasonably safe in construction, and that was free of pathogenic bacteria and other substances injurious to human health.

54. The Defendants owed a duty of care to the Plaintiffs to prepare, serve and sell food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable consumer.

55. The Defendants failed to warn Plaintiffs of the hazards and defects in their food.

56. The Defendants breached their duties of care to the Plaintiffs, breached the standard of care expected of reasonably prudent food manufacturers, distributors, supplies and restaurants, and were otherwise careless, and negligent.

57. As a direct and proximate cause of the Defendants' breach of their duties of care, and the then existing standards of care, the Plaintiffs suffered those injuries and damages as set forth with particularity, above.

58. Had Jaycee Burgin, not eaten contaminated food served and/or provided to her at the Sagebrush restaurant on October 5-6, she would not have ingested e-coli, would not have become critically ill and died from E. coli O157:H7, and the Plaintiffs would not have suffered the injuries and damages asserted with particularity herein.

WHEREFORE, the Plaintiffs request that this Court enter judgment against the Defendants and award all damages, costs, and any other relief in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

**Count IV**
**Negligence *Per Se***

59. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

60. Defendants' acts and omissions constituted violations of their duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of their food products, including the requirements of the Federal Food, Drug and Cosmetic Act ("FDCA" 21 U.S.C. §§ 301 *et seq*. and the Federal Meat Inspection Act ("FMIA") 21 U.S.C. §§ 600 *et seq*.

61. Specifically, Defendants' acts constitute the prohibited acts of adulteration, misbranding or both, as defined by FDCA, 21 U.S.C. §§ 331(a) and (g), 342(a) and 343(a); and FMIA 21 U.S.C. §§ 601 and 610(c) and (d). Defendants' acts are in further violations of Congress's Statements of Findings and Declaration of Policy as stated in 21 U.S.C. § 602.

62. Defendants' acts constitute a breach of duty subjecting Defendants to civil liability for all damages arising there from and for parallel state law requirements, under theories of negligence *per se*.

63. Plaintiffs, as purchasers of the Defendants' ground beef products, are within the class of persons the statutes and regulations described above are designed to protect and Plaintiffs' injuries are the type of harm statutes and regulations are designed to prevent.

64. As a direct and proximate cause of the Defendants' breach of their duties of care, and of the statutory requirements setting forth standards to prevent adulteration and misbranding of food, the plaintiffs suffered those injuries and damages as set forth with particularity, above.

65. Had Jaycee Burgin, not eaten contaminated food served and/or provided to her at the Sagebrush restaurant on October 5-6, she would not have ingested e-coli, would not have become critically ill and died from E. coli O157:H7, and the Plaintiffs would not have suffered the injuries and damages asserted with particularity herein.

WHEREFORE, the Plaintiffs request that this Court enter judgment against the Defendants and award all damages, costs, and any other relief in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

## Count IV
## Wrongful Death

66. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

67. Plaintiffs, Leah Burgin and Bobby Burgin, as parents and Co-Ancillary Administrators of the Estate of Jaycee Burgin, deceased, bring this action on behalf of themselves and decedent's lawful beneficiaries, pursuant to T.C.A. §§ 20-5-106 and 20-5-107.

68. As a direct and proximate result of the conduct of the Defendants and/or the defective nature of their product as outlined above, the Decedent, Jaycee Burgin, suffered bodily injury resulting in death, pain and suffering, disability, disfigurement, mental anguish, loss of capacity of the enjoyment of life, a shortened life, expenses of hospitalization, health care and treatment, loss of earnings, and other damages.

69. As a direct and proximate result of the conduct of the Defendants, Plaintiffs Leah and Bobby Burgin incurred hospital, nursing and medical expenses; funeral; and estate administration expenses as a result of decedent's death. Plaintiffs have suffered additional compensable losses, including but not limited to companionship and services. Plaintiffs, as parents and Co-Administrators of the Estate of Jaycee Burgin bring this claim on behalf of Decedent's lawful beneficiaries for these above mentioned damages, for the present monetary value of the Decedent to her legal beneficiaries, and any resulting pecuniary losses sustained by the beneficiaries.

WHEREFORE, the Plaintiffs request that this Court enter judgment against the Defendants and award all damages, costs, and any other relief in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

**<u>Count VI</u>**
**<u>Survival Action</u>**

70. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

71. Plaintiffs, as parents and Co-Ancillary Administrators of the Estate of Jaycee Burgin bring this action on behalf of the estate of Jaycee Burgin pursuant to T.C.A. § 20-5-101.

72. As a direct and proximate result of the conduct of the Defendants, Decedent, prior to her death, suffered injuries that caused terrible pain, suffering, mental anguish and emotional distress, shock, grief, sorrow, and impairment of the enjoyment of life, and other damages, until the time of her death; and, as a direct and proximate cause of the aforesaid, Decedent suffered a loss of earnings and earnings capacity, and other damages.

WHEREFORE, the Plaintiffs request that this Court enter judgment against the Defendants and award all damages, costs, and any other relief in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, pray for judgment against the Defendants as follows:

A. Judgment against the Defendants for just compensation in a fair and reasonable amount for all general, special, incidental and consequential damages suffered by Plaintiffs as a result of Defendants' conduct; and

B. Judgment in a fair and reasonable amount for expenses and legal injuries incurred, in a fair and reasonable amount for the damages suffered; and

C. Such additional and/or further relief, including interest, costs, and reasonable attorney fees, as this Court deems just and equitable.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury as to all claims so triable in this action.

Respectfully submitted,

**JANET, JENNER & SUGGS, LLC**

s/ John C. Hensley, Jr.
John C. Hensley, Jr. (Bar No. 16668)
366 Merrimon Avenue
Asheville, North Carolina 28801
Telephone: (828) 771-0500

Fax: (828) 771-0502
jhensley@medlawlegalteam.com

**JANET, JENNER & SUGGS, LLC**
Robert K. Jenner (*pro hac vice* pending)
Dianna M. Morris (*pro hac vice* pending)
Hal J. Kleinman (*pro hac vice* pending)
1829 Reisterstown Road, Suite 320
Baltimore, Maryland 21208
(410) 653-3200
(410) 653-6903 (fax)

*Attorneys for Plaintiffs*